IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHA S.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-CV-02388-BU |
| FRANK BISIGNANO, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's appeal of the Social Security Administration's denial of Disability Insurance Benefits (DIB) under Title II of the Act, 42 U.S.C. §§ 416(i), 423, and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). For the reasons explained below, the Court AFFIRMS the decision of the Commissioner of Social Security.

### I. JURISDICTION

The Court has subject matter jurisdiction under 42 U.S.C. § 405(g) because Plaintiff seeks judicial review of the final decision of the Commissioner. Dkt. Nos. 12 at 4; 7-1 at 6. Venue is proper in the Northern District of Texas, Dallas Division, because Plaintiff resides in Dallas County, Texas. Dkt. No. 1 at 1; 42 U.S.C. § 405(g). This case was automatically referred to the undersigned with a designation to exercise the district court's

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Special Order No. 3-350 (N.D. Tex. Sept. 11, 2023).

## II. BACKGROUND

Plaintiff alleges that she became disabled on October 25, 2019. Dkt. No. 12 at 2; Administrative Record, Dkt. No. 7-1 (Tr.) at 17. She was fifty-two years old on the alleged onset date. Dkt. No. 19 at 3 n.1. At the time of the Commissioner's final October 2024 decision, Plaintiff's past relevant work (PRW) consisted of employment as a Claims Clerk I for State Farm Mutual. [2] Tr. 28.

---

[2] The Court notes that Social Security Ruling ("SSR") 24-2p, which rescinds SSR 86-8 and rescinds and replaces 82-61 and 82-62, changed the relevant time period requirement for past relevant work (PRW) from fifteen years to five years. *See* SSR 24-2p, 89 Fed. Reg. 48479, 2024 WL 3291790, at *3 (S.S.A. June 6, 2024). SSR 24-2p became effective on June 22, 2024. (*Id.* at *48479 & n.1.)

SSR 24-2p applicability is as follows:

> We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.

SSR 24-2p at 48479 n.1; *see also Buescher v. Comm'r, Soc. Sec. Admin.,* No. 4:24-CV-538-BJ, 2025 WL 1931948, at n.4 (N.D. Tex. July 14, 2025).

Accordingly, although not applicable when the ALJ made her first decision on February 2, 2024, SSR 24-2p did apply when she made her second decision on October 22, 2024. Accordingly, the ALJ reviewed all PRW experience during the timeframe of October 22, 2019, through October 22, 2024. *Compare* TR. 144 with TR. 19. The ALJ properly found that Plaintiff had PRW as a claims clerk I at State Farm Mutual from April 2016 to October 25, 2019. *See* Tr. 28, 340, 347. Although Plaintiff's last day of substantial gainful employment—October 25, 2019—was barely within the relevant timeframe, Plaintiff's work at State Farm Mutual classifies as PRW under SSR 24-2p. *See also* SSR 24-2p at 48480 (defining PRW).

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on November 3, 2020. Dkt. No. 12 at 2; Tr. 29. The Social Security Administration denied her applications initially in January 2022 and again upon reconsideration in June 2023. Dkt. No. 18 at 1.

Administrative Law Judge (ALJ) Lisa A. Bentley issued an unfavorable decision on February 2, 2024. Tr. 142–53. The Appeals Council granted Plaintiff's request for review, vacated that decision, and remanded the case for further proceedings. Tr. 161. The Appeals Council concluded that the ALJ's finding that Plaintiff could perform her PRW was not supported by the residual functional capacity (RFC) assessment because the RFC limited Plaintiff to understanding and remembering detailed instructions, while the ALJ had classified Plaintiff's PRW as a claims adjuster—a skilled occupation requiring the performance of more complex tasks. *Id*. The Appeals Council therefore directed the ALJ, among other things, to:

> Give further consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 404.1560(a)-(b) and 416.960(a)-(b)). If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

*Id*. at 162.

On remand, the ALJ conducted a second hearing; the ALJ received testimony from Plaintiff, who was represented by counsel, as well as testimony from a second vocational expert testified. Tr. 73–100. On October 22, 2024, the ALJ again issued an unfavorable decision. Tr. 17–29. This time, however, the ALJ reclassified Plaintiff's PRW as a Claims Clerk I rather than a claims adjuster, as discussed in greater detail below. Tr. 28–29. The

Appeals Council denied Plaintiff's request for review, rendering the October 22, 2024 decision the Commissioner's final decision. Tr. 1–6. Plaintiff then timely filed this action seeking judicial review.

**A. Overview of ALJ's Decision**

Following the second hearing, the ALJ again concluded that Plaintiff was not disabled under the Social Security Act. Specifically, the ALJ found that: (1) Plaintiff met the insured status requirements of the SSA through December 31, 2025, (2) Plaintiff had not engaged in substantial gainful activity since October 25, 2019, (3) Plaintiff suffered the following severe impairments: obesity, bilateral hip degenerative joint disease, bilateral knee degenerative joint disease, lumbar degenerative disc disease, and bilateral shoulder disorder, and (4) none of these impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in the Social Security Regulations.[3] Tr. 19–23.

The ALJ next determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to the following limitations:

> [R]equires a cane to ambulate through the workplace; never climb ladders, ropes, or scaffolds; never crawl and kneel; occasionally balance, stoop, crouch, and climb ramps/stairs; unable to work in an environment with concentrated vibration or extreme temperatures; cannot work in proximity to hazards; occasionally operate foot controls bilaterally; occasional overhead reaching bilaterally; can tolerate frequent changes to workstation or job tasks.[4]

[3] These first four findings are the same as ALJ Bentley's first four findings in her February 2, 2024 decision. Tr. 144–47.

[4] The only substantive differences between the February 2, 2024 RFC and the October 22, 2024 RFC, is that the ALJ did not include "frequent interactions with coworkers, supervisors, and the public" or "can

*Id.* at 23.

Based on this RFC and the vocational expert's testimony, the ALJ concluded that Plaintiff could perform her PRW as a Claims Clerk I both as she actually performed the job and as it is generally performed in the national economy. Tr. 27–28; SSR 24-2p. Because either finding independently supported a Step Four determination, the ALJ concluded that Plaintiff was not disabled and ended the sequential evaluation at Step Four. Tr. 28–29.

In short, the Appeals Council vacated the ALJ's February 2024 decision because the RFC limitation to "understand and remember detailed instructions" was inconsistent with the ALJ's classification of Plaintiff's PRW as a skilled claims adjuster position. On remand, after further consideration, the ALJ reclassified Plaintiff's PRW as a Claims Clerk I and removed the limitation that Plaintiff could only "understand and remember detailed instructions." Based on the reclassified PRW and revised RFC, the ALJ again concluded that Plaintiff could perform her PRW and was therefore not disabled.

## III. LEGAL STANDARDS

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner's analysis proceeds

---

understand and remember detailed instructions and frequently make work-related decisions" in the October 22, 2024 RFC. *Compare* Tr. 148 with TR. 23.

along five steps. *See* 20 C.F.R. § 404.1520(a)(4). The Commissioner considers (1) whether the claimant is engaged in "substantial gainful activity," (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations, (4) whether the claimant can still do her "past relevant work," and (5) whether the impairment prevents the claimant from doing any relevant work in the national economy. *Id.* The claimant bears the burden on the first four steps. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). If the claimant advances that far, the burden shifts to the Commissioner to "prove the claimant's employability." *Id.*

The Court's review of the Commissioner's determination "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Id.* Not every error warrants remand. "[P]rocedural perfection is not required" and remand is not warranted unless a plaintiff was prejudiced by the Commissioner's error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam).

## IV. DISCUSSION

On appeal, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence and contains legal errors. Dkt. No. 12 at 1. Specifically, Plaintiff makes the following four arguments which the undersigned will address in turn: (1) not all of Plaintiff's impairments were evaluated to determine how they affected the Plaintiff's ability

to work, (2) the ALJ failed to comply with SSR 00-4p and resolve the conflicts between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles, 4th Ed., Rev'd 1991, (DOT), (3) the Commissioner failed to evaluate the Plaintiff's obesity in accordance with SSR 19-2p, and (4) the ALJ exhibited misconduct. *Id*. at 2.

As an initial matter, many of Plaintiff's arguments compare the ALJ's February 2, 2024 decision with her subsequent October 22, 2024 decision and suggest that the differences demonstrate a lack of substantial evidence or bad faith. The Court disagrees.

The Appeals Council vacated the February 2024 decision and remanded the case for further proceedings after concluding that the ALJ's Step Four analysis required additional consideration. Tr. 161–62. Specifically, the Appeals Council directed the ALJ to further evaluate whether Plaintiff could perform her past relevant work and, if warranted, to obtain vocational expert testimony. *Id*. On remand, the ALJ conducted a second hearing, obtained testimony from a vocational expert, reconsidered Plaintiff's past relevant work, and issued a new decision. Tr. 73–100.

Because the February 2024 decision was vacated, it is not the Commissioner's final decision and is not the decision before this Court. Rather, the Court's review is limited to whether the October 2024 decision applied the correct legal standards and is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Taylor*, 706 F.3d at 602. The mere fact that the ALJ arrived at different findings after remand that are unfavorable to Plaintiff does not establish bad faith or reversible error.

**1. The ALJ Properly Evaluated Plaintiff's Impairments**

Plaintiff first argues that the ALJ failed to adequately consider the effects of her

vertigo, sedating medications, chronic pain, and mental impairments. Dkt. No. 12 at 5–7. According to Plaintiff, these impairments limited her ability to maintain concentration, persistence, and pace, thereby affecting her ability to sustain work-related physical and mental activities on a regular and continuing basis—eight hours a day, five days a week. *Id*. at 5, 7. Plaintiff therefore contends that the ALJ should have incorporated corresponding limitations—addressing deficiencies in concentration, persistence, and pace—into the RFC assessment and the hypothetical question posed to the vocational expert.

In light of Plaintiff's testimony and the VE's testimony, Plaintiff's argument is not without some intuitive appeal. Plaintiff testified that she was terminated from her prior employment in 2019 after missing three to six days of work per month due to pain and illness. Tr. 82–83. She also testified that she experienced vertigo-related falls approximately twice per month and that the medication prescribed for her vertigo caused her to feel "drowsy and sleepy." Tr. 88–89. Plaintiff further testified that the medication made her feel "foggy" and prevented her from concentrating for extended periods. Tr. 90. She also testified that her chronic pain would prevent her from performing even simple full-time work because of the accommodations she would require, including the ability to change positions, elevate her legs, and take additional restroom breaks. Tr. 83–85, 87–88, 92–93. Viewed collectively, this testimony, if credited, suggests impairments that could interfere with her ability to sustain employment.

At the hearing, the vocational expert testified that an individual would be unable to maintain employment if she could not maintain concentration, persistence, and pace for two-hour periods or if she missed more than one day of work per month. Tr. 97–98. Plaintiff

contends that, because of her non-severe impairments, she would be unable to meet either of these requirements. Tr. 83, 90. Plaintiff ultimately argues that "[c]learly a reasonable person would see that the Claimant's ability to maintain attendance and focus when dealing with her chronic pain and vertigo would be compromised." Dkt. No. 12 at 7.

The Court finds that the ALJ considered the Plaintiff and VE's testimony in arriving at the present RFC. As the ALJ explained, "[a]n individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p)." Tr. 19.

At steps two and three of the sequential evaluation process, the ALJ evaluated the severity of Plaintiff's depression impairment by considering the four broad areas of mental functioning known as the "paragraph B" criteria. Tr. 20–22. The ALJ found no limitations in the first three functional areas. *Id*. For the functional area of concentrating, persisting, and maintaining pace, the ALJ explained:

> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has no limitation. She reports and testifies to problems in this area due to pain medication side effects. Ex. 4E/1, 6; 10E/1. However, this does not correspond with her mental impairment. As to how her mental health affects this area, attention/concentration appears normal in behavioral health exams, as she can spell "world" backwards and has intact recall. Ex. 11F/4; *see also* 14F/6. Accordingly, *the record reflects no limitation in this area*.

Tr. 21 (emphasis added).

Although the ALJ found no limitation in concentrating, persisting, or maintaining

pace, the ALJ found a mild limitation in the fourth functional area of adapting or managing oneself. Tr. 21. Accordingly, the ALJ determined that Plaintiff's depression caused, at most, minimal limitations in her ability to perform basic mental work activities and therefore was non-severe. Tr. 22. Importantly, the ALJ's paragraph B analysis was limited to determining the severity of Plaintiff's mental impairment at steps two and three of the sequential evaluation process. As the ALJ later explained, however, the RFC assessment considered the limiting effects of all of Plaintiff's impairments, including those that were not severe. Tr. 22.

Moving beyond steps two and three, the ALJ proceeded to assess Plaintiff's RFC. In doing so, the ALJ explained that:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

Tr. at 23.

Under the second step of the two-step process outlined in SSR 16-3p, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). Thus, the ALJ was required to evaluate Plaintiff's allegations regarding her symptoms—including vertigo, sedating medications, chronic pain, and mental impairments—and determine whether those symptoms warranted additional functional limitations in the RFC assessment.

Here, the ALJ expressly acknowledged Plaintiff's complaints related to vertigo, sedating medications, chronic pain, and mental impairments. Tr. 24. The ALJ nevertheless determined that "[n]otwithstanding the claimant's allegations, the treatment records, examinations, and other evidence do not reasonably support a finding that the claimant is as limited as alleged." Tr. 27. The ALJ then conducted an extensive four-page, single-spaced analysis comparing Plaintiff's subjective symptom allegations with the objective medical evidence, medical opinions, and prior administrative medical findings. Tr. 24–27.[5]

As part of that analysis, the ALJ again found that Plaintiff's depression did not result in limitations in her ability to maintain concentration, persistence, or pace. Tr. 26–27. The ALJ also considered Plaintiff's allegations—citing her testimony[6]—that her vertigo, sedating medications, chronic pain, and mental impairments affected her ability to remain focused and sustain full-time work. After considering those allegations, the ALJ included in the RFC only those functional limitations related to Plaintiff's impairments that were supported by the record. Tr. 23. Therefore, the ALJ implicitly found these impairments

---

[5] Specifically, the ALJ found that "[Plaintiff's] statements . . . concerning the intensity, persistence, and limiting effects of [Plaintiff's] symptoms, are inconsistent with the medical and other evidence." Tr. 24. The ALJ acknowledged the effect of "dizziness/vertigo in response to pain medications," noting that the "assigned postural limitations and hazard exposure limitations" in the RFC accounted for these complaints. Tr. 25. The ALJ also found Dr. Stillman's opinion that Plaintiff had "decreased ability to carry out complex instructions . . . [and] decreased work pace/speed" unpersuasive, given Dr. Stillman's evaluation found "intact memory, attention/concentration, and thought processes/content." Tr. 26. By comparison, the ALJ found the DDS reconsideration mental health consultant's finding of "non-severe mental impairments with no more than 'mild' B criteria limitations" and "non-severe depression" persuasive, given Plaintiff's "normal concentration, recall, language skills, and thought processes." Tr. at 26–27.

[6] "In this case, the claimant alleges and testifies to the following symptoms and limitations:… Her medications cause drowsiness and dizziness and impede concentration and ability to complete tasks. Ex. 4E/1, 6; 10E/1… The claimant testified she was ultimately terminated from her last job in 2019 for missing too many days due to her symptoms, indicating she was missing 3–5 days per month due to knee swelling, pain, and difficulty walking…" Tr. 24.

were not sufficiently limiting—individually or in combination—to warrant additional RFC limitations addressing absenteeism or concentration, persistence, or pace.[7]

Plaintiff's argument essentially asks the Court to reweigh the evidence and accept her testimony that her symptoms would result in disabling absenteeism and an inability to maintain the required level of concentration, persistence, and pace. But the ALJ was responsible for evaluating the consistency of Plaintiff's subjective complaints with the evidence of record and resolving conflicts in the evidence. *See Howard v. Berryhill,* No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("According to the ALJ, Plaintiff's medically determinable impairments can reasonably be expected to produce "some" of Plaintiff's alleged symptoms but only to the extent the symptoms are consistent with the ALJ's RFC."). The existence of complaints or symptoms does not establish that additional limitations were required; rather, the relevant inquiry is whether the limitations provided in the ALJ's RFC assessment are supported by substantial evidence in the record. As discussed above, the ALJ found the "objective medical evidence and other evidence" more persuasive than the Plaintiff's subjective reports of debilitating physical and mental conditions; said medical evidence provides substantial evidence in support of the ALJ's RFC assessment.

Lastly, the Court notes that Plaintiff relies on only two cases in support of her

[7] *See Halterman ex rel. Halterman v. Astrue*, No. CIV.A. 11-0630, 2012 WL 3764051, at *10 (W.D. La. July 20, 2012), report and recommendation adopted, No. CIV.A. 11-0630, 2012 WL 3762470 (W.D. La. Aug. 29, 2012), aff'd sub nom. *Halterman ex rel. Halterman v. Colvin*, 544 F. App'x 358 (5th Cir. 2013) ("Although the instant ALJ found that [Plaintiff's] impairments moderately affected his ability to maintain concentration, persistence, or pace—thus, satisfying the criteria for a severe, but not per se disabling impairment, the record also contains substantial evidence to support the ALJ's implicit finding that the moderate limitation did not impact [Plaintiff's] ability to perform simple, unskilled work.").

argument, neither of which is binding on this Court. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011); *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), as amended (Feb. 22, 2019). Both cases are distinguishable because, in each, the ALJ expressly found that the claimant had a moderate limitation in concentration, persistence, and pace but failed to account for that limitation in the RFC assessment or hypothetical question posed to the vocational expert. *See Winschel*, 631 F.3d at 1181 (The court indicated that unless the medical evidence suggested that the claimant's ability to work was unaffected by the moderate limitation that the Commissioner recognized in the psychiatric review technique ("PRT") at steps two and three of the sequential evaluation process, or otherwise implicitly accounted for in the hypothetical to the vocational expert at step five of the sequential evaluation process, then the ALJ's finding of not disabled is not supported by substantial evidence.); *see Thomas v. Berryhill*, No. 3:16-CV-00836-MOC, 2017 WL 3595494, at *3 (W.D.N.C. Aug. 21, 2017), vacated and remanded, 916 F.3d 307 (4th Cir. 2019), as amended (Feb. 22, 2019) ("The plaintiff correctly notes that the ALJ found that the claimant had moderate difficulty in concentration, persistence, and pace…"). Here, by contrast, there was no recognized limitation that required incorporation into the RFC or hypothetical.

But, to that point, Plaintiff also argues that the ALJ's February 2024 decision did include a mild—as opposed to moderate in *Winschel* and *Thomas*—limitation in concentration, persistence, and pace. Dkt. No. 12 at 7, 13. As explained above, however, that decision was vacated by the Appeals Council and is not the final decision under review. Moreover, courts within the Fifth Circuit—unlike *Winschel*—have recognized that even

moderate limitations in concentration, persistence, and pace may be adequately addressed through RFC restrictions that account for the claimant's supported functional limitations.[8]

In conclusion, the Court cannot find any legal error in the manner in which the ALJ evaluated Plaintiff's symptoms regarding vertigo, sedating medications, chronic pain, and mental impairments, or in the manner in which the ALJ compared those complaints to the record as a whole. Ultimately, the ALJ determined that the record did not support Plaintiff's claim that she was as limited as alleged and reasonably concluded that her impairments, whether considered individually or in combination, did not warrant additional RFC limitations addressing concentration, persistence, and pace or absenteeism that would impact her ability to perform her PRW. The ALJ's RFC determination is supported by substantial evidence.

Accordingly, remand on this basis is not warranted.

**2. The ALJ Properly Complied with SSR 00-4p and Was Not Required to Resolve a Nonexistent Conflict Between the VE's Testimony and the DOT**

[8] *See Bordelon v. Astrue*, 281 Fed. Appx. 418, 423 (5th Cir. 2008) (holding that "restrictions to rare public interaction, low stress, and simple one-to two-step instructions reflect that the ALJ reasonably incorporated [Plaintiff's] moderate concentration, persistence, and pace limitations....''); *Herron v. Colvin*, 16-CA-425, No. A-16-CA-00425-SS, 2017 WL 2615445, at *8 (W.D. Tex. June 16, 2017) (hypothetical limiting an individual to "simple, routine tacks, SVP 3 level, or lower semi-skilled jobs, provided there is no need for changes in the routine work setting and no more than superficial contact with coworkers and the general public" adequately accounted for plaintiff's moderate limitations in concentration, persistence, or pace.); *Ledet v. Colvin*, Civil Action 15-4651, 2016 WL 3079026, at * 14-15 (E.D. La. May 3, 2016) (rejecting argument that ALJ's determination that plaintiff could perform work of a simple, routine nature with no public interactions and only occasional interactions with coworkers and supervisors failed to include the moderate limitations in concentration, persistence, and pace); *Adams v. Astrue*, Civil Action No. 07-1248, 2008 WL 2812835, at * 4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."); *Harris v. Comm'r of Soc. Sec. Admin.,* No. CV 16-749-EWD, 2018 WL 627559, at *10 (M.D. La. Jan. 30, 2018) ("Accordingly, the undersigned finds that the ALJ's limitation of Plaintiff to work of a simple and routine nature adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace.").

Plaintiff next argues that the ALJ failed to comply with SSR 00-4p because the vocational expert's testimony that an individual requiring a cane to ambulate through the workplace could perform Plaintiff's past relevant work as a claims clerk conflicted with the requirements of that occupation as described in the Dictionary of Occupational Titles ("DOT"). Dkt. No. 12 at 9. Specifically, Plaintiff contends that the Claims Clerk I occupation requires the ability to sit six (6) hours a day, stand and walk two (2) hours a day, and carry up to ten (10) pounds. *Id.*; Selected Characteristics of Occupations in the DOT, Appendix B; *See also*, SSR 83-10; SSR 96-09. Plaintiff argues that an individual who must use a cane would be unable to perform those tasks, thereby creating an apparent conflict between the vocational expert's testimony and the DOT that the ALJ was required to identify and resolve under SSR 00-4p. *Id*. at 10. Plaintiff further argues that the use of a cane would erode the occupational base because it could affect her ability to carry files, maintain pace, or safely ambulate through the workplace, yet neither the vocational expert nor the ALJ addressed those alleged limitations. *Id*.

At the hearing, the ALJ asked the vocational expert whether an individual with Plaintiff's residual functional capacity—including the requirement to use a cane to ambulate through the workplace—could perform Plaintiff's past relevant work. Tr. at 96. The VE answered, "Yes, Your Honor. As a claims clerk." *Id*. The ALJ later asked the VE if his testimony was consistent with the DOT, to which he answered "It has, Your Honor, except for the use of the assistive device that is based on my experience in placing individuals in jobs and an observation of jobs being performed." Tr. at 97.

After the hearing, the ALJ explained in her October 2024 decision that:

> Pursuant to SSR 00-4p, the undersigned finds the vocational expert's testimony is consistent with the Dictionary of Occupational Titles ("DOT"). However, there are several limitations not addressed by the DOT, namely overhead reaching, use of a cane for ambulation, and changes in workstation or job tasks. The vocational expert relies on her education and professional experience in vocational rehabilitation and job placement (Ex. 15E) to testify to the availability of the claimant's past relevant work given such limitations. Thus, pursuant to SSR 00-4p, the undersigned accepts the vocational expert's testimony and finds the claimant can return to her past relevant work as actually and as generally performed.

Tr. at 28.

SSR 00-4p provides that when vocational evidence provided by a vocational expert is not consistent with information in the DOT, the adjudicator must resolve the conflict before relying on the vocational evidence. SSR 00-4p, 2000 WL 1898704. However, not every difference between vocational expert testimony and a plaintiff's interpretation of an occupation's requirements constitutes a conflict requiring resolution. Rather, a conflict exists when the vocational expert's testimony is directly inconsistent with the DOT's description of the occupation. *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).

Here, no such conflict existed. The ALJ included Plaintiff's cane requirement in the hypothetical question posed to the vocational expert. Tr. at 94–96. After considering that limitation, the vocational expert testified that an individual with Plaintiff's residual functional capacity could perform Plaintiff's past relevant work as a claims clerk. *Id*. The DOT does not state, or even suggest, that an individual who uses a cane is unable to perform sedentary work, sit for up to six hours in an eight-hour workday, stand and walk for up to two hours, or occasionally lift and carry up to ten pounds. Because the DOT is silent regarding the use of a hand-held assistive device, Plaintiff has identified no direct

inconsistency between the DOT and the vocational expert's testimony that would trigger the ALJ's duty to resolve an apparent conflict under SSR 00-4p.[9]

Plaintiff's argument instead depends on additional assumptions about how a cane would affect the performance of the occupation, including whether an individual using a cane could carry files, whether use of a cane would slow workplace pace, or whether the cane would create a workplace hazard. These speculative concerns do not establish an apparent conflict between the VE's testimony and the DOT. What's more, the ALJ specifically addressed this issue by obtaining vocational testimony regarding the effect of the cane requirement on Plaintiff's ability to perform work.

Nor does SSR 96-9p require a different result. That ruling recognizes that a medically required hand-held assistive device may erode the unskilled sedentary occupational base and explains that vocational resources may be useful in determining the extent of that erosion. SSR 96-9p, 1996 WL 374185, at *7. The ALJ followed that guidance by obtaining testimony from a vocational expert who considered the cane requirement and identified work Plaintiff could perform.

Accordingly, Plaintiff has not demonstrated that the VE's testimony conflicted with the DOT or that the ALJ failed to comply with SSR 00-4p. Because the ALJ properly

---

[9] For example, Plaintiff argues that, "Not only would she have difficulty ambulating into, and throughout, the workplace, but it is *unlikely* that [Plaintiff] would be able to lift and/or carry necessary files while ambulating." Tr. at 9 (emphasis added). This argument is speculative. The assertion that Plaintiff would "likely" be unable to carry files while using a cane does not establish an apparent conflict between the VE's testimony and the DOT. The DOT does not state that an individual who uses a cane is unable to occasionally lift or carry up to ten pounds, nor does it otherwise indicate that the occupation of claims clerk is incompatible with the use of a hand-held assistive device. Plaintiff's own speculation regarding how she might perform the job is insufficient to create the type of direct inconsistency that triggers the ALJ's duty to resolve an apparent conflict under SSR 00-4p.

incorporated Plaintiff's cane limitation into the hypothetical question and obtained vocational testimony addressing the effect of that limitation, substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work.

Accordingly, remand on this basis is not warranted.

**3. The ALJ Properly Considered Plaintiff's Obesity in Assessing the RFC**

Plaintiff next argues that the ALJ did not properly evaluate her obesity in accordance with SSR 19-2p. Specifically, Plaintiff contends that although the ALJ identified obesity as a severe impairment, the ALJ failed to adequately consider the functional limitations caused by her obesity, including limitations related to sustaining work activity, fatigue, sitting, standing, walking, and the potential need for workplace accommodations. Plaintiff maintains that the ALJ's statement that the RFC "reflects symptoms and resulting limitations due to obesity" was insufficient because the ALJ did not specifically explain how Plaintiff's obesity affected her ability to perform work-related activities.

SSR 19-2p requires an ALJ to consider the limiting effects of obesity when assessing a plaintiff's RFC. SSR 19-2p, 2019 WL 2374244. Obesity may increase the severity of other impairments and may affect a plaintiff's ability to perform exertional and nonexertional functions, including sitting, standing, walking, balancing, and sustaining work activity over time. *Id*. However, SSR 19-2p does not require an ALJ to find additional limitations merely because a plaintiff is obese. Rather, the ALJ must evaluate the evidence and determine whether obesity results in specific functional limitations that affect the plaintiff's ability to perform work-related activities.

Here, the ALJ adequately considered Plaintiff's obesity. The ALJ identified obesity

as a severe impairment and specifically addressed Plaintiff's weight and BMI in evaluating her impairments. Tr. 20, 23–25. The ALJ also cited SSR 19-2p and explained that the RFC assessment accounted for symptoms and limitations resulting from Plaintiff's obesity. Tr. 23. Consistent with that finding, the ALJ limited Plaintiff to less than a full range of sedentary work, required her to use a cane to ambulate through the workplace, and imposed additional postural and environmental restrictions.[10] Tr. 23. These limitations demonstrate that the ALJ did not disregard Plaintiff's obesity but instead considered its impact in combination with her other impairments.

Plaintiff has not identified any additional functional limitation caused by obesity that the ALJ was required to include in the RFC. Although Plaintiff points to her elevated BMI, her difficulty obtaining knee replacement surgery due to weight, and her testimony regarding difficulty sustaining work activity, those facts do not establish that the ALJ omitted a specific work-related limitation supported by the record as a whole. Plaintiff's assertion that she may require accommodations such as a bariatric chair or modified workstation likewise does not establish error. Plaintiff identifies no medical opinion, vocational evidence, or other evidence demonstrating that such accommodations were medically necessary or required for her to perform sedentary work.

---

[10] "As of 2019, she was roughly 250 pounds at 5-foot-7, with a body mass index ("BMI") of nearly 40. Ex. 1F/10, 19. This is near morbidly obese levels, and very likely contributes to the claimant's complaints of knee pain and back pain, as discussed herein… The RFC's restrictions to sedentary work— which involves limited standing/walking of typically no more than two hours total per workday—use of a cane for workplace ambulation, no crawling, kneeling, and climbing ladders, ropes, or scaffolds, occasional balancing, crouching, and climbing ramps/stairs, no work in concentrated vibrations, extreme temperatures, or in proximity to workplace hazards, and occasional operation of foot controls, sufficiently account for the claimant's bilateral knee symptoms and *related obesity* as reflected in the evidence." Tr. at 25 (emphasis added).

The ALJ properly considered Plaintiff's obesity and incorporated limitations supported by the record into the RFC assessment. The ALJ's RFC determination included restrictions that addressed Plaintiff's ability to perform sedentary work despite her impairments, including obesity. Plaintiff's disagreement with the RFC does not establish that the ALJ failed to consider her obesity.

Accordingly, the ALJ properly evaluated Plaintiff's obesity under SSR 19-2p, and substantial evidence supports the RFC assessment. Plaintiff's claim of error on this basis should be denied.

**4. Plaintiff Received a Full and Fair Hearing**

Plaintiff lastly argues that the ALJ failed to provide a full and fair hearing because the ALJ allegedly acted with unfairness, prejudice, and misconduct. Dkt. No. 12 at 13. Specifically, Plaintiff contends that the ALJ improperly obtained testimony from a different vocational expert at the second hearing, accepted the vocational expert's classification of Plaintiff's past relevant work as semi-skilled sedentary work rather than skilled light work, and modified the RFC assessment in a manner that allowed the vocational expert to testify that Plaintiff could perform her past relevant work. *Id*. at 12–13. According to Plaintiff, these actions demonstrate that the ALJ manipulated the proceedings to obtain a finding that Plaintiff was not disabled. *Id*.

Here, the Appeals Council vacated the prior ALJ decision and remanded the case for further proceedings. Tr. 161–62. The Appeals Council directed the ALJ, among other things, to:

Give further consideration to whether the claimant has past relevant work

> and, if so, can perform it (20 CFR 404.1560(a)-(b) and 416.960(a)-(b)). If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

*Id*. at 162.

Upon further consideration, the following exchange happened at the October 10, 2024 hearing:

> **ALJ Question:** Mr. Bryant [the VE], do you have, or can you give an impartial and neutral opinion in this case even though Social Security is paying your fee?
>
> **VE Answer:** Yes, Your Honor.
>
> **ALJ Question:** Have you discussed your testimony with me or the claimant prior to the hearing?
>
> **VE Answer:** No, ma'am.
>
> **ALJ Question:** And have you read and listened to the claimant's testimony regarding her past work?
>
> **VE Answer:** Yes, ma'am.
>
> **ALJ Question:** That was previously classified by a different vocational expert as a claims adjuster, DOT number 241.217-010, the DOT listed that at light but she performed it at sedentary and the SVP: 6. Based on your review of the file and listening to the claimant's testimony, is that how you would classify her past work?
>
> **VE Answer:** No, ma'am.
>
> **ALJ Question:** Okay. How would you classify it?
>
> **VE Answer:** She wasn't an adjusted based on the description of the duties performed.
>
> **ALJ Question:** Okay.
>
> **VE Answer:** She was more consistent with a claims clerk.
>
> **ALJ Question:** Okay.

> **VE Answer:** Claims Clerk I, the DOT number is 241.362-010, exertional level sedentary, SVP: 4, semi-skilled.

Tr. 95–96.

Following the hearing, in the ALJ's October 2024 decision, the ALJ acknowledged and explained the reclassification of Plaintiff's PRW:

> The undersigned acknowledges that the vocational expert at the prior November 2023 hearing classified the claimant's work at State Farm as a claims adjuster, DOT# 241.217-010 (SVP 6, light; actually performed at sedentary). However, the undersigned adopts the classification of this work as a claims clerk I, DOT# 241.362-010 (SVP 4, sedentary) from the vocational expert at the most recent October 2024 hearing. Per the DOT, the claims adjuster position involves investigating claims and preparing reports of the findings of the investigation to determine whether the claim should be paid. In contrast, the claims clerk I reviews insurance policies and claims forms and calculates the amount of the paid claim; it does not involve investigatory work. Here, the claimant testified she worked at a desk (i.e., she never went into the field) and described her job as a "claims agent" (Ex. 2E/1; 5E/1) in which she "evaluated auto claims and policy information" and "answered a large volume of calls." Ex. 5E/4. Thus, the undersigned finds the 2024 vocational expert's classification of the claimant's past relevant work as a claims clerk I is more accurate given the claimant's description of her job duties.

Tr. 28.

A plaintiff in a Social Security proceeding is entitled to a full and fair hearing before an impartial adjudicator. *See Mathews v. Eldridge*, 424 U.S. 319, 325 n.4, 333 (1976). A claimant must receive notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Id*. However, a claimant does not establish a due process violation merely by showing that the ALJ reached an unfavorable decision or resolved evidentiary disputes against the claimant.

The record demonstrates that Plaintiff received a full and fair hearing. Following

the Appeals Council's remand order, the ALJ held a telephonic hearing on October 10, 2024. Tr. 17, 73–100, 161–62. Plaintiff received notice of the hearing, was represented by counsel, and testified before the ALJ. Tr. 17, 73–100, 271. Plaintiff's counsel also questioned the vocational expert regarding his testimony. Tr. 97–98. Notably, Plaintiff's counsel expressly stated that she had no objection to the vocational expert testifying. Tr. 95. Although counsel questioned the vocational expert regarding the vocational testimony generally, counsel did not challenge the vocational expert's classification of Plaintiff's past relevant work during the hearing. Tr. 95–98.

Plaintiff's challenge is based primarily on the fact that the second hearing involved a different vocational expert and resulted in a different evaluation of Plaintiff's past relevant work. Dkt. No. 12 at 12–13. Plaintiff also argues that the ALJ failed to explain every change between the February 2024 decision and the October 2024 decision. *Id*. These circumstances, however, do not demonstrate bias, prejudice, or misconduct. The Appeals Council vacated the prior ALJ decision and remanded the case for further proceedings. Tr. 161. Once the prior decision was vacated, the ALJ was not bound by the findings in that decision and was required to reevaluate the claim based on the record and the issues identified by the Appeals Council.

Nor does the ALJ's acceptance of the vocational expert's testimony demonstrate unfairness. The ALJ explained why she found the vocational expert's classification of Plaintiff's past relevant work as a claims clerk I to be the more accurate classification. Tr. 28. Plaintiff may disagree with that determination, but disagreement with an ALJ's evaluation of the evidence does not establish a denial of due process.

Likewise, Plaintiff has not shown that the ALJ's revised RFC assessment resulted from improper bias or an effort to reach a predetermined outcome. The ALJ was permitted to reassess the RFC following remand and was not required to adopt limitations from the vacated decision. Plaintiff identifies no evidence demonstrating that the ALJ acted with an improper motive or failed to consider the evidence presented.

In sum, the Appeals Council vacated the prior ALJ decision and remanded the case for further proceedings, after which the ALJ conducted a new hearing, obtained additional vocational testimony, and issued a new decision based on the administrative record. Plaintiff received notice of the hearing, representation by counsel, an opportunity to present testimony and evidence, and an opportunity to question the vocational expert. The administrative proceedings therefore satisfied the requirements of due process. Plaintiff's allegations of unfairness, prejudice, and misconduct are unsupported by the record and amount to disagreement with the ALJ's evaluation of the evidence rather than a showing of actual bias or procedural unfairness.

Accordingly, remand on this basis is not warranted.

## V. CONCLUSION

For the reasons stated above, the Court AFFIRMS the decision of the Commissioner denying Plaintiff's application for DIB and SSI benefits.

ORDERED this 5th day of August 2026.



JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE